**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-0625-WJM-BNB

DAVID HENDERSON

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
JEREMY OWNBEY, individually and in his official capacity as Denver Sheriff's
Departmental Deputy, and
JON DOE, Employee of the Denver Sheriff's Department in his/her individual and
official capacity,

      Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff David Henderson brings this action against the City and County of

Denver, Denver County Sheriff's Deputy Jeremy Ownbey, and Jon Doe (together

"Defendants") claiming a violation of his Fourth and Fourteenth Amendment rights

under 42 U.S.C. § 1983 ("Section 1983") (Compl. (ECF No. 1.))  This matter is before

the Court on Defendants' Motion for Summary Judgment ("Motion").  (ECF No. 34.)  For

the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if, under the

relevant substantive law, it is essential to proper disposition of the claim.  *Wright v.*

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if

the evidence is such that it might lead a reasonable jury to return a verdict for the

nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  In analyzing

a motion for summary judgment, a court must view the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-*

*Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must

resolve factual ambiguities against the moving party, thus favoring the right to a trial.

*See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

The relevant facts, viewed in the light most favorable to Plaintiff as the non-

movant, are as follows.

On March 12, 2011, Plaintiff spent the day celebrating St. Patrick's Day with

friends on Blake Street in downtown Denver.  (Pl.'s Dep. (ECF No. 41-2) p. 52.)  During

the day, Plaintiff and his friends visited various establishments along Blake Street,

including a number of bars.  (*Id*. at 58.)  Plaintiff had previously lived in a condominium

building at 1940 Blake Street, and spent time visiting with friends that still lived in the

building.  (*Id*. at 29.)  Plaintiff was the designated driver for his friends that day, and did

not drink any alcohol. (*Id*. at 53-54.)

On the evening of March 12, 2011, Defendant Jeremy Ownbey was working off-

duty as a security guard for the Sports Column, a bar at 1930 Blake Street.  (Ownbey

2

Dep. (ECF No. 34-2) p. 48-50.)  Defendant Ownbey wore his full uniform when he worked as an off-duty security guard.  (*Id*.)  At some point during the evening, Plaintiff and his friends left Hayter's & Co, a bar at 1920 Blake Street, and walked north.  (Pl.'s Dep. at 58, 65-66.)  Plaintiff's friends attempted to go into Sports Column, but were denied entry because they were too intoxicated.  (*Id*. at 55-57.)  Plaintiff continued past Sports Column and let himself into the lobby at 1940 Blake Street.  (Pl.'s Dep. at 64-65.)  He was the only person in the lobby at that time.  (*Id*. at 65-66.)

After being turned away at Sports Column, Plaintiff's friends walked over to the front of the building at 1940 Blake Street.  (Ownbey Dep. at 59.)  Plaintiff's friends were yelling at people walking past, and some people yelled back.  (*Id*.)  Defendant Ownbey believed that Plaintiff's friends were attempting to instigate problems, so he and his partner, Chris Evans, approached the building.  (*Id*. at 59-60.)  Officer Evans engaged one of Plaintiff's friends outside of the building, and called a detox van to pick him up. (*Id*. at 67.)

From his position outside of 1940 Blake Street, Defendant Ownbey could see into the lobby of 1940 Blake through the glass front door.  (*Id*. at 62.)  Defendant Ownbey observed Plaintiff talking to friends in the lobby; they had nothing in their hands, and were not making any threatening gestures towards the officers.  (*Id*. at 63.) Defendant Ownbey testified in his deposition that Plaintiff did nothing that make him feel threatened.  (*Id*.)  Ownbey attempted to get into the building, but the door was locked.  (*Id*. at 63.)

At some point, the door was opened from the inside.  (Pl.'s Dep. at 67; Ownbey Dep. at 66.)  The parties' versions of what happened next are vastly different, so the

3

Court will describe each.

## A.      Defendant Ownbey's Version of Events

Defendant Ownbey contends that, before the door closed, he caught it and held it open while Officer Evans talked outside the building with one of Plaintiff's friends. Ownbey testified that he was watching the lobby, and saw Plaintiff came around the corner into the lobby.  (Ownbey Dep. at 69.)  When Plaintiff saw Ownbey at the door of the building, Plaintiff turned and ran towards the back of the building.  (*Id*. at 69-71.) Ownbey entered the building and chased after Plaintiff.  (*Id*. at 72.)  Ownbey yelled at Plaintiff to stop running, but he did not.  (*Id*. at 73.)  Ownbey followed Plaintiff through the lobby and out a different door that led to an alley.  (*Id*.)  Ownbey chased Plaintiff because he was concerned about his level of apparent intoxication, and wanted to send him to detox.  (ECF No. 41-10.)

Ownbey contends that, once in the alley, Plaintiff looked over his shoulder while running and tripped over his own feet.  (Ownbey Dep. at 77.)  Plaintiff then fell to the ground, rolled once, and stood back up.  (*Id*.)  Ownbey states that Plaintiff then somehow[1] fell a second time, which allowed Ownbey to catch up to Plaintiff and put his hand and leg on Plaintiff's back to keep him on the ground.  (*Id*. at 79.)  An emergency medical technician who had been running behind Ownbey also put his hand on Plaintiff's back to keep him down.  (*Id*. at 81.)  Ownbey placed handcuffs on Plaintiff, and helped him stand up.  (*Id*. at 84.)  Plaintiff did not resist, and was compliant with all requests.  (*Id*.)

---

[1]  The page of Ownbey's deposition which apparently discusses Plaintiff's second fall was not submitted to the Court.

While Ownbey and the technician were escorting Plaintiff, one of them noticed a laceration on his hand.  (Ownbey Dep. at 87.)  Plaintiff also complained about his knee hurting.  (*Id*. at 88.)  An ambulance was called, and Plaintiff was transported to the hospital.  (Knoetgen Dep. (ECF No. 34-5) p. 26.)  Other than putting his knee in Plaintiff's back to hold him down, Defendant Ownbey denies using any force against the Plaintiff during this incident.  (Ownbey Dep. at 81.)

B.    **Plaintiff's Version of Events**

As is typical in these types of cases, Plaintiff's version of his interaction with Defendant Ownbey is significantly different.  Plaintiff contends that he was standing a few feet away from the front door when multiple cops came through the door.  (Pl.'s Dep. at 70.)  Plaintiff does not remember much about what specifically happened, but alleges that the uniformed officers started punching him, threw him to the ground, and handcuffed him.  (*Id*. at 71, 74.)  Plaintiff contends that he felt his hands being stepped on, someone on his lower back twisting his arms and punching him, and he felt kicks. (*Id*. at 73.)  Plaintiff alleges that he blacked out at that point, and woke up at the hospital with surgery needed on his hand and his knees were all "messed up".  (*Id*.)

 Plaintiff denies running from any police officers, and contends that this abuse occurred within the lobby of 1940 Blake Street.  (*Id*. at 192.)  Plaintiff also denies taking any defensive actions, stating that he was handcuffed behind his back while most of the abuse occurred.  (*Id*. at 76.)  At least two witnesses have testified that they saw police officers slam Plaintiff to the ground, step on his hand, and put a knee on his back, all while Plaintiff was in the lobby of 1940 Blake Street.  (Requejo Dep. (ECF No. 41-6) p. 25; Salankey Dep. (ECF No. 41-8) pp. 33-34.)  However, these witnesses could not

identify the officers who struck Plaintiff.  Additionally, because he was knocked out during the alleged abuse and did not wake up until he was in the hospital, Plaintiff cannot specifically identify anyone who inflicted blows upon him.  (*Id*. at 125.)

Plaintiff's blood test from the hospital that evening was negative for alcohol. (ECF No. 41-11.)  At the hospital, Plaintiff was diagnosed with a fracture of the first distal phalanx, for which surgery was required.  (ECF No. 41-13.)  Plaintiff was not charged with any crime arising out of any of the events on March 12, 2011.  (ECF No. 41 at 13.)

### III.  ANALYSIS

On these facts, Plaintiff brings the following claims against Defendant Ownbey: (1) Excessive Force in violation of 42 U.S.C. § 1983; (2) Invasion of Bodily Integrity in violation of 42 U.S.C. § 1983; (3) assault; (4) battery; and (5) extreme and outrageous conduct/intentional infliction of emotional distress.  Plaintiff also brings a claim for failure to train and/or supervise against the City and County of Denver.  (ECF No. 1.)

Defendants move for summary judgment on all claims.  The Court will discuss each in turn below.

### A.     Excessive Force Claim

Plaintiff alleges that Defendant Ownbey's actions constituted excessive force in violation of the Fourth Amendment.  (ECF No. 1 at 4-5.)  Defendant Ownbey asserts qualified immunity in response to this claim.  (ECF No. 34 at 13.)  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (internal quotation omitted).  To resolve a claim of qualified immunity, a court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the violated right was "clearly established" at the time of the violation.  *Id.* at 232.  "Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry."  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

      1.   <u>Constitutional Violation</u>

      The first prong of the qualified immunity analysis requires an evaluation of the plaintiff's allegations of constitutional violations.  Here, Plaintiff alleges that Ownbey used excessive force in effectuating his seizure.  (Compl. at 4-5.)

      "The Fourth Amendment protects the right of individuals to be free from improper arrest and detention."  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008); *see* U.S. Const. amend. IV ("The right of people to be secure in their persons ... against unreasonable seizures . . . shall not be violated.").  The Fourth Amendment also prohibits seizures which are unreasonable because excessive force was used to effectuate them.  *See Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

      "Excessive force claims under the Fourth Amendment are governed by an 'objective reasonableness' standard."  *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).  Under this standard, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.*  In determining whether the use of force is reasonable in a particular situation, the Court must consider "(1) the severity of the crime at issue, (2) whether the

suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee." *Id.* Additionally, the Court may consider whether "the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009) (citing *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)) (internal quotation marks omitted).

Notably, Defendant Ownbey does not contest the fact that the Court must view all facts in the light most favorable to Plaintiff and, when viewed through his lens, a reasonable jury could find that Plaintiff was subjected to excessive force. Indeed, an argument to the contrary would be preposterous. Defendant Ownbey has admitted that he did not suspect Plaintiff of having committed any crime; rather he approached Plaintiff to assess whether detox was necessary. Defendants seem to suggest that Defendant Ownbey's actions were appropriate because he had probable cause to believe that Plaintiff's friends were disturbing the peace. But the Tenth Circuit has held that an individual must be judged for his own actions, and not the actions of those around him. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008) ("The Fourth Amendment plainly requires probable cause to arrest Fogarty as an individual, not as a member of a large basket containing a few bad eggs."); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982) ("The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct . . . that itself is not protected."); *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (holding that officers could not have thought indiscriminate arrests were lawful when "a few individuals within [a protesting] crowd had violated the law at

8

an earlier time and then desisted").

With regard to the second prong, Defendant Ownbey has testified that he did not feel threatened by Plaintiff, and did not observe any weapons or other items in Plaintiff's hands. (Ownbey Dep. at 63.)  Though Defendant Ownbey contends that he believed Plaintiff was intoxicated, which could indicate that Plaintiff was a danger to himself, Plaintiff's blood test came back negative for alcohol.  Thus, there is no evidence that Plaintiff posed an immediate danger to anyone.

Finally, Plaintiff has stated that he did not run from Defendant Ownbey or otherwise attempt to resist.  In fact, Plaintiff contends that he was handcuffed for much of the beating, which would significantly impact the level of resistance that he could possibly offer.

The Court acknowledges that many of these facts are disputed but, per Plaintiff's version of events, which the Court must credit at this stage in the litigation, Plaintiff was simply standing in the lobby of an apartment building when Defendant Ownbey charged into the building, began hitting and kicking him, threw him to the ground, and stepped on him.  Viewing the facts in this manner, the Court has little difficultly concluding that a reasonable juror could find that the degree of force used against Plaintiff was excessive.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) (holding that unprovoked beating of individual outside courthouse was excessive force because "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (officers used excessive force against handcuffed individual by beating him with flashlights, kneeing him in groin and shoving him into

patrol car).

Instead of arguing about whether the force used was excessive, Defendant Ownbey contends that summary judgment is appropriate because Plaintiff has failed to present sufficient evidence that he was the officer responsible for the assault.  (ECF No. 34 at 15.)  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  A plaintiff must "identify specific actions taken by particular defendants in order to make out a viable § 1983 . . . claim."  *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013).

Ownbey argues that he is only specifically identified as having run after Plaintiff through the lobby to the alley, and that because Plaintiff contends the assault occurred inside the lobby, Plaintiff has not met his burden of showing that Defendant Ownbey was personally involved in the constitutional violation.  (*Id*. at 16.)  The Court acknowledges that Plaintiff has testified that he cannot identify his attackers, and that the other witnesses offered by Plaintiff could only generally describe the officers. (*See* Pl.'s Dep. at 125.)  Thus, the Court agrees that there is no evidence directly identifying Defendant Ownbey as the police officer who used force against Plaintiff inside the lobby of 1940 Blake Street.

However, this lack of direct evidence does not mean that summary judgment is warranted.  Viewing the facts in the light most favorable to the Plaintiff, the Court finds that a reasonable juror could conclude from the circumstantial evidence in this case, that the officer who used excessive force on Plaintiff was Defendant Ownbey.  Plaintiff alleges that he was beaten inside the lobby of 1940 Blake Street.  (Pl.'s Dep. at 72.)

10

Defendant Ownbey's testimony, which is supported by that of other witnesses, is that he was the only Denver police officer who entered into 1940 Blake Street.  (Ownbey Dep. at 90.)  On these facts, a reasonable juror could find that Defendant Ownbey personally participated in the beating of Plaintiff.

Defendants' contention that, in order to survive summary judgment, Plaintiff is required to positively identify Defendant Ownbey as the police officer that beat him is not supported by the case law.  In *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), a non-violent protestor was put in a stress position, forced to the ground, and handcuffed in manner that caused a tear in a tendon in his wrist.  Neither the plaintiff nor any other witness could positively identify which of the police officers used force against the plaintiff.  *Id*. at 1152.  Despite this deficiency, the Tenth Circuit held that the individual defendant police officers that were present at the scene were not entitled to qualified immunity.  *Id*. at 1164-65; *see also Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (reversing district court's grant of summary judgment, which was based on the fact that the plaintiff could not specifically identify which officer engaged in the use of force, and holding that the plaintiff's testimony created a dispute of fact about their involvement); *Segal v. Los Angeles Cnty.*, 1988 WL 79481, at *1 (9th Cir. 1988) (unpublished) ("[I]t is not necessary that direct evidence exists to link particular officers with the assault.  It is sufficient to withstand a [motion for summary judgment] if overall questions of credibility and inference exist that might permit the jury to infer participation.").

Because Plaintiff has submitted sufficient evidence to permit a reasonable juror to find that Defendant Ownbey was the officer who used excessive force against him,

the Court finds that he has satisfied the first prong of the qualified immunity standard.

    2.   <u>Clearly Established</u>

Because Defendant Ownbey has asserted qualified immunity, Plaintiff is entitled to proceed in this action only if the constitutional violation alleged was clearly established at the time of the relevant events. *Pearson*, 555 U.S. at 232. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).

The Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted). In the Fourth Amendment context, the Tenth Circuit has held that "because excessive force jurisprudence requires an all-things-considered inquiry with 'careful attention to the facts and circumstances of each particular case,' there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern." *Casey*, 509 F.3d at 1284 (citation omitted).

Since at least 2007, it has been clearly established that "an officer's violation of the *Graham* [*v. Connor*] reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as []he did." *Casey*, 509 F.3d at 1286 (quoting *Holland*

*ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1197 (10th Cir. 2001)).  In this case,

viewing the facts in the light most favorable to Plaintiff, Defendant Ownbey punched,

kicked, threw down, and stepped on an individual who he did not suspect of any crime,

who did not pose an immediate threat, did not attempt to flee, and was offering no

resistance.  On these facts, the Court finds a reasonable officer would have known that

his actions constituted excessive force.  *See Buck*, 549 F.3d at 1291 (holding that it was

clearly established that police officers could use only minimal force to effectuate the

arrest of a person suspected of a minor offense, who posed no threat to the safety of

the officers, and who made no attempts to flee or resist arrest).

Because the Court has found that Plaintiff has presented sufficient evidence to

permit a reasonable juror to conclude that Defendant Ownbey's use of force was a

constitutional violation, and that such violation was clearly established, the Court finds

that Defendant Ownbey is not entitled to qualified immunity.  Accordingly, Defendants'

Motion for Summary Judgment is denied as to Plaintiff's excessive force claim.

**B.     Invasion of Bodily Integrity Claim**

Plaintiff contends that Defendant Ownbey violated his right to bodily integrity in

violation of the Fourteenth Amendment.  (ECF No. 1 at 7.)  Defendant Ownbey moves

for summary judgment on this claim, arguing that Plaintiff's claims involving the alleged

beating are governed by the Fourth Amendment and, therefore, Plaintiff cannot seek

relief under the Fourteenth Amendment.  (ECF No. 34 at 23-24.)

The Fourteenth Amendment to the United States Constitution provides, in

pertinent part, that "[n]o State shall make or enforce any law which shall abridge the

privileges or immunities of citizens of the United States; nor shall any State deprive any

person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. While this provision could proscribe actions such as those taken by Defendant Ownbey in this case, the Supreme Court has held that where a plaintiff's rights are protected by a specific provision of the Constitution, such as the Fourth Amendment, then a Fourteenth Amendment claim for substantive due process cannot be brought. *See Graham,* 490 U.S. at 395 (1989). Because the Fourth Amendment specifically protects against unreasonable searches and seizures, and because it provides an explicit textual source of constitutional protection against intrusive governmental conduct, the Fourth Amendment, and not the more generalized notion of "substantive due process," must apply. *See id*.

As discussed above, the Court has found that Plaitniff's Fourth Amendment claim for excessive force is entitled to proceed. As such, Plaintiff cannot also maintain a Fourteenth Amendment claim arising out of the same events. Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's claim for invasion of bodily integrity in violation of the Fourteenth Amendment.

## C.   State Law Claims

Plaintiff alleges that Defendant Ownbey's actions constituted the state law torts of assault, battery, and intentional infliction of emotional distress. (ECF No. 1 at 7-9.) Defendants move for summary judgment on all of these claims, again arguing that there is no evidence that Defendant Ownbey personally participated in any beating of Plaintiff. (ECF No. 34 at 26-27.) For the reasons set forth above, the Court finds that a reasonable juror could conclude that Defendant Ownbey was the police officer that

14

used force against Plaintiff.

Defendants also argue that, because these claims do not fall within any of the specifically enumerated waivers of immunity found in the Colorado Governmental Immunity Act, Defendant Ownbey is entitled to immunity unless Plaintiff can show that he engaged in willful and wanton conduct. (ECF No. 34 at 26.) Defendants argue that Plaintiff has failed to introduce sufficient evidence to support such a finding and therefore summary judgment is appropriate. (*Id*. at 27.) The Court disagrees and finds that a reasonable juror could conclude that Defendant Ownbey purposefully pursued a course of action which he knew would result in harm to Plaintiff. *See Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001) (holding that an officer engages in willful and wanton conduct when he purposefully pursues a course of action or inaction which the officer considered would probably result in harm to the plaintiff). As such, a reasonable juror could conclude that Officer Ownbey is not entitled to immunity from Plaintiff's assault and battery claims in this case.

With regard to Plaintiff's claim of intentional infliction of emotional distress, Defendants argue that summary judgment is appropriate because Plaintiff has not shown that Defendant Ownbey's acts rose to the level of outrageousness necessary to establish liability for this tort. (ECF No. 34 at 27-28.) The Court disagrees and concludes that a reasonable juror could find that it is beyond the bounds of decency for a police officer entering a private building to beat, kick, and throw to the ground an individual who is not suspected of a crime and does not pose an immediate threat to anyone. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (holding that extreme and outrageous conduct is that which is "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

Accordingly, Defendants' Motion for Summary Judgment is denied as to Plaitniff's state law claims.

## D.    Municipal Liability

Plaintiffs brings a claim against the City and County of Denver[2] ("Denver") alleging that Denver's failure to train and/or supervise Officer Ownbey caused the constitutional violation in this case.  (ECF No. 1 at 6-7.)

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or causes a person 'to be subjected' to such a deprivation." *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)).  "[U]nder Section 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Id*. at 1359 (emphasis in original).  "They are not vicariously liable under § 1983 for their employees' actions."  *Id.*

To prevail on a municipal liability claim, a plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  The existence of a policy or

---

[2]  Plaintiff's claims against Defendant Ownbey in his official capacity are essentially claims against the City and County of Denver.  *See Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.  Therefore we will consider [a plaintiff's] claims against the City and the police officers acting in their official capacities as one claim.").  As such, these claims will be considered together.

custom can be established in many different ways, including demonstrating the

existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010) (citation and quotations

omitted).

Denver first argues that it has no liability because none of its officers used

excessive force.  (ECF No. 34 at 20.)  However, as set forth above, the Court has found

that there is a genuine dispute of material fact about whether Defendant Ownbey

violated Plaintiff's constitutional rights.  Thus, the Court finds that Plaintiff has shown

that a municipal employee may have violated his constitutional rights.

Denver also argues that, even if Plaintiff has shown that one of its officers

committed a constitutional violation, Plaintiff has failed to introduce sufficient evidence

showing that any of its policies, training or discipline was a moving force behind the

constitutional violation.  (ECF No. 34 at 20-21.)  Plaintiff contends that Denver's training

of its deputies in use of force is inadequate, and that this forms a basis for municipal

liability.  (ECF No. 41 at 26.)

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only

where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

> To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen v. Muskogee, Okla.*, 119 F.3d 837, 841-42 (10th Cir. 1997).

With respect to the first element, the Court has found a genuine dispute of fact as to whether Defendant Ownbey's use of force against Plaintiff exceeded constitutional standards. On the second element, the Court finds that the circumstances present in this case are a usual and recurring situation that police officers must deal with. Officer Ownbey has stated that he suspected Plaintiff and his friends of being intoxicated and disturbing the peace, which is a common issue in the City of Denver, particularly in the part of the city in which this incident arose.

Plaintiff's municipal liability claim fails at the third and fourth elements. Plaintiff alleges that Denver's inadequate training is evident through the fact that Officer Ownbey failed to file a use of force report following the incident with Plaintiff, in violation of Denver policy. (ECF No. 41 at 29.) Plaintiff also contends that Defendant Ownbey failed to follow Denver's policies on reporting incidents to supervisory or commanding officers. (*Id*. at 28-29.) However, even if the Court were to assume that Denver failed

to adequately train Defendant Ownbey on these policies, and that such failure was deliberate indifference on the part of Denver, there is no evidence that this deliberate indifference had any direct causal connection to the constitutional violation at issue here. Such inadequate training would have, at most, caused a lack of reporting of the use of force, either by way of a report to a supervisor or commanding officer, or by filing a written report. The Court fails to see how inadequate reporting of a use of force is directly causally connected to the decision to use excessive force in the first instance. Thus, Defendant Ownbey's failure to report his interaction with Plaintiff to supervisors or to file a use of force report until nearly a year after this incident is not evidence of a lack of training on the part of Denver which caused the injuries in this case.

Denver has submitted evidence showing that it had a use of force policy in place at the time of this incident. (ECF No. 34-19.) Denver has also shown that it trained all of its officers on this policy, including the fact that the use of force has to be reasonable considering the circumstances of the interaction. (*Id*. at 105; ECF No. 34-26 ¶ 3.) Denver's lead arrest control instructor has stated that Denver Police Department officers are "not trained to simply storm into buildings and begin punching and kicking a person all over their body, throwing the person to the ground, dragging the person, handcuffing the person and beating the person into unconsciousness" and that, were one of its officers to do this, it would be a violation of policy. (ECF No. 34-26 ¶ 5.) Plaintiff has admitted these factual contentions (*see* ECF No. 41 at 8), and offers no evidence to the contrary. Given this, the Court finds that Plaintiff has failed to show that any Denver policy or lack of training was a moving force behind the constitutional violation alleged in this case.

19

Because Plaintiff cannot point to an official policy or failure to investigate that caused the constitutional violation here, he must show a widespread practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691; *see also Cannon v. City & Cty. of Denver*, 998 F.2d 867, 877 (10th Cir. 1993).  Plaintiff alleges that Denver has a "continuing and persistent pattern of misconduct" with regard to investigating complaints of excessive force.  (ECF No. 41 at 29.)  In support of this argument, Plaintiff points to the fact that Defendant Ownbey and the other police officers did not file timely use of force reports in this case, and that Denver's internal affairs division did not adequately investigate this incident.  (*Id.*)  However, evidence regarding how Denver and its employees acted in this one case is insufficient to establish a persistent and widespread practice that is permanent and well settled.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy"); *see also Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (two incidents of alleged excessive force insufficient to show policy or custom); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (two instances of misconduct "do not indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy of overlooking police misconduct."); *Carter v. Dist. of Columbia*, 795 F.2d 116, 124 (D.C. Cir. 1986) ("the assorted actual instances of misconduct demonstrated in this case do not line up to compose a common or widespread pattern of police misbehavior adequate to establish § 1983 municipal liability").

The Court finds that Plaintiff has failed to identify any policy or practice that was the moving force behind the constitutional violation alleged here.  As such, Defendants' Motion for Summary Judgment is granted as to Plaintiff's municipal liability claim against Denver.

**E.     John Doe Defendant**

Plaintiff's Complaint names as a defendant "John Doe, employee of the Denver Sheriff's Department in his/her official and individual capacity".  (ECF No. 1 at 1.) Defendants move for summary judgment as to any claims brought against John Doe Defendant.  (ECF No. 34 at 28-29.)  Plaintiff does not oppose and, in his opposition brief, affirmatively states his intent to dismiss such claims.  (ECF No. 41 at 34.)  As such, the Court grants Defendants' Motion for Summary Judgment as to the claims against John Doe Defendant.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendants' Motion for Summary Judgment (ECF No. 34) is GRANTED IN PART and DENIED IN PART;

2.     The Motion is DENIED as to Plaintiff's claims against Defendant Ownbey in his individual capacity for excessive force in violation of the Fourth Amendment, assault, battery, and extreme and outrageous conduct;

3.     The Motion is GRANTED as to Plaintiff's claim against Defendant Ownbey arising under the Fourteenth Amendment;

4.     The Motion is GRANTED as to all claims against Defendant City and County of Denver, Defendant Ownbey in his official capacity, and John Doe Defendant;

and

5.      This case REMAINS SET for a 5-day jury trial beginning on July 7, 2014, with a

Final Trial Preparation Conference set for June 20, 2014 at 2:00 p.m.

Dated this 21st day of January, 2014.

BY THE COURT:

William J. Martinez
United States District Judge